No. 22,427.

FRANK SHEARER, *Appellee,* v. THE FARMERS LIFE INSURANCE
COMPANY, *Appellant.*

### SYLLABUS BY THE COURT.

1. FOREIGN INSURANCE COMPANY—*Jurisdiction—Conditions Under Which
   Service May Be Made on Superintendent of Insurance.* Inasmuch as
   the statute provides that it is only in the county in which the plaintiff
   resides, or in which the cause of action arose, that a suit against a
   foreign corporation may be begun in this state by the service of
   summons on the superintendent of insurance, where neither of such
   conditions exists service made in that manner is ineffective.

2. SAME—*Contract for Services—Place "Where Cause of Action Arose."*
   Where a written contract to pay an agreed compensation for cer-
   tain services, a part of which are to be performed in Kansas, is exe-
   cuted in another state between a resident thereof and a corporation
   of a third state, a cause of action against the corporation, based upon
   its failure to pay for the plaintiff's services according to the agree-
   ment, cannot be regarded as having arisen in a county of this state
   by virtue of the fact that a part of the services were to be performed
   therein.

3. SAME—*No General Appearance Effected.* A general appearance is
   not effected by the insertion, in a motion to set aside the service of
   summons, of allegations concerning some of the facts on which the
   plaintiff's claim is founded, which are made because of their bearing
   upon the validity of the service, and which are material to that ques-
   tion.

4. SAME—*Plea in Abatement—Special Appearance—No Submission to
   Court's Jurisdiction.* Where a defendant upon a special appearance
   objects to the service, he does not lose the right to have the overruling
   of his objection reviewed on appeal by afterward filing a plea in
   abatement in which jurisdictional and nonjurisdictional matters are
   united, or by contesting the plaintiff's claim on its merits.

5. SAME—*Allegations of Answer—No General Appearance.* A defendant
   who has properly preserved for review the question of the validity of
   the service is not to be deemed to have waived the point, by seeking
   affirmative relief, in consequence of inserting in his answer a prayer
   that he be allowed to go hence without day, with such relief as the
   facts may entitle him to, and that he recover his costs, although the
   allegations of the answer might support a money judgment in his be-
   half, where the pleading as a whole discloses no purpose to ask such
   a recovery.

6. SAME—*Motion to Quash Summons—Reviewable on Appeal.* The over-
   ruling of a motion to set aside the service of summons does not require

to be submitted to the reëxamination of the trial court in a motion for a new trial in order to be reviewable on appeal.

Appeal from Wyandotte district court, division No. 1; ED-WARD L. FISCHER, judge. Opinion filed April 10, 1920. Reversed.

*A. J. Herrod,* and *H. S. Roberts,* both of Kansas City, *W. F. Zumbrunn,* of Kansas City, Mo., and *H. A. Hicks,* of Denver, Colo., for the appellant.

*William G. Holt, James K. Cubbison, Amos Townsend,* and *J. Herbert Smith,* all of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

MASON, J.: On June 20, 1918, Frank Shearer brought an action in the district court of Wyandotte county against the Farmers Life Insurance Company, a Colorado corporation, for a balance of $2,500 due under a written contract on account of his services in assisting it to acquire the stock of the Anchor Life Insurance Company, of Kansas. He recovered judgment, and the defendant appeals.

1. The summons was served on the state superintendent of insurance, and the defendant, by a motion to quash, made upon a special appearance limited to the purpose thereof, objected to the jurisdiction of the court on the ground that no proper service of summons had been made upon it, and now complains of the adverse ruling thereon. The motion, which was verified by affidavit, contained allegations to this effect:

The defendant was licensed by the insurance department in September, 1915, to do business in Kansas, but the license was canceled February 1, 1918. Before that time the defendant canceled its agency contracts, withdrew from the state, and revoked the authority it had given for process against it to be served on the insurance superintendent. Thereafter it did no business here beyond the collection of premiums upon policies previously written. The contract sued upon was executed in Missouri, of which state the plaintiff was then and at all times thereafter a resident.

An affidavit of the insurance superintendent, filed by the plaintiff, set out these facts:

In December, 1914, the defendant reinsured all policies there-

tofore issued by the Anchor Life Insurance Company, a Kansas Corporation. After that time and until March 1, 1918, it did all necessary business with reference thereto and wrote policies in its own name in this state. Its license to do business here expired February 28, 1918, and no application for a renewal had been made, pending investigation as to its solvency, but the superintendent agreed that it might issue policies on applications then pending. Thereafter it collected premiums and did business in Kansas with respect to policies already issued, but wrote no new ones except upon applications received prior to March 1, 1918.

The consent given by a foreign insurance corporation, as a condition of its being allowed to do business in this state, that actions against it may be begun by the service of process on the insurance superintendent, is in terms made "irrevocable." (Gen. Stat. 1915, § 5213.) Nevertheless, after the corporation has withdrawn or been expelled from the state and ceased to do business here it is not subject to suit in that manner, except under special circumstances, as for instance where the action is based upon a policy held by a resident of Kansas, written while the company was still transacting business here. (*Life Association v. Boyer,* 62 Kan. 31, 61 Pac. 387; *Hunter v. Mut. Reserve Life Ins. Co.,* 218 U. S. 573. See, also, 12 R. C. L. 107-114; 21 R. C. L. 1341-1346.) Whether or not under the showing here made the defendant should be deemed to have withdrawn from the state and ceased to do business there in such sense as to make effective as against the plaintiff its attempted revocation of the insurance superintendent's authority to receive service need not be determined, because of considerations which will be hereinafter stated.

It has been said that statutes providing for the service of summons upon a foreign corporation by the delivery of a copy to a public officer are intended for the benefit of residents of the state and are not available to nonresidents (12 R. C. L. 113; 21 R. C. L. 1345), and also that in order for effective service to be had in such manner the cause of action must have arisen in the state. (*Simon v. Southern Railway,* 236 U. S. 115; 12 R. C. L. 115; 21 R. C. L. 1345. To the contrary see 21 R. C. L. 1345-1346.) The defendant challenges the power of the legislature to authorize the kind of service here relied upon under

the conditions shown to exist.  The question so raised need not be entered upon, unless it is first determined that the legislature has undertaken to do so.  The sufficiency of the service must first be tested according to the terms of our own statute. It provides that an insurance company as a condition precedent to obtaining authority to do business in the state "shall file in the insurance department its written consent, irrevocable, that actions may be commenced against such company in the proper court of any county in this state in which the cause of action shall arise or in which the plaintiff may reside by the service of process on the superintendent of insurance"; and that "actions against any such insurance company may be brought in any county where the cause of action arose or in which the plaintiff may reside." (Gen. Stat. 1915, § 5213.) Substantially the same language is used in other similar acts. (Gen. Stat. 1915, §§ 2137, 5219.)    Manifestly, therefore, in order for a plaintiff to avail himself of this statute one of two conditions must exist; either he must be a resident of the state and of the county where the action is brought, or the cause of action must have arisen in that county.  Here the plaintiff was a resident of Missouri, and although the action in its nature was transitory and not local, he could bring it only in the county where the cause of action arose, if jurisdiction of the defendant had to be acquired by service upon the insurance superintendent.  (*Nowak v. Insurance Co.*, 103 Kan. 778, 176 Pac. 654.)

2.  The contract sued upon included a provision that the plaintiff was to receive his traveling expenses, in the event that in the course of his services under it he should be sent out of Kansas City, Mo., or Kansas City, Kan.  From this it could readily be inferred that a part of his services were to be performed in Wyandotte county.  The cause of action sued upon, however, cannot be deemed to have arisen in Wyandotte county because of this fact.  A cause of action upon a contract does not arise until there has been a breach (1 Enc. L. & P., 1008), and it arises where the breach takes place.  (40 Cyc. 83.)  The only breach of the contract alleged in the petition was the refusal to pay the amount due under it, and this occurred, presumptively at least, at the residence of the plaintiff, and not in

37—106 KAN.

Wyandotte county. The words "where the cause of action arose" do not refer to the place where the transactions took place out of which the cause of action grew. That was settled for this jurisdiction in *Bruner v. Martin,* 76 Kan. 862, 93 Pac. 165, where the reasons for the decision and the authorities bearing thereon are fully set forth. Where it is intended that the venue of an action shall be fixed by the place where transactions involved in the controversy occurred, this purpose is expressed by providing that the action shall be brought where the cause of action "or some part thereof" arose. (40 Cyc. 84. For an illustration, see Gen. Stat. 1915, § 6940.) Whether or not the attempted withdrawal of the defendant from the state would have prevented jurisdiction over it from being acquired by service on the insurance superintendent, if the plaintiff had been a resident of Wyandotte county, Kansas, or if the cause of action had arisen in that county, it is clear that such service could not be effective without the existence of one or the other of those conditions, and for that reason the motion to quash should have been sustained.

3. The plaintiff contends, however, that, irrespective of the sufficiency of the service upon the insurance superintendent, personal jurisdiction of the defendant was conferred by its own conduct. He insists that the defendant inserted in the motion to quash allegations concerning nonjurisdictional matters, thereby waiving any defect in the service and submitting itself to the jurisdiction of the court for all purposes. The paragraphs pointed out as containing such matters read thus:

"That the plaintiff's cause of action is predicated upon a contract executed in the State of Missouri, and not such a contract as would require the defendant company to be licensed under the laws of the State of Kansas in order to render it eligible to legally execute the contract described, and by reason thereof, the entering into said contract was not the doing of business with citizens of Kansas within the meaning of the law.

"That the plaintiff at the date of the execution of said contract and ever since has been and still is a resident and citizen of and residing within the State of Missouri, and that the contract sued upon was not a contract between a citizen of Kansas and the defendant company, within the meaning of the law."

All the allegations of these paragraphs, although they relate to matters on which the plaintiff's claim is founded, are per-

tinent to the question whether conditions existed such as to bring the case within the terms of the statute allowing personal jurisdiction to be acquired over a foreign corporation by service of summons upon the superintendent of insurance, and were manifestly inserted in the motion because of their bearing on that issue. We do not discover that they have any bearing upon the merits of the controversy as afterwards defined by the pleadings, so that it is unnecessary to consider whether or not that fact, if it existed, would justify treating their insertion as a waiver of the objection made. The defendant was entitled to present upon the motion, without prejudice to its contentions thereunder, any facts tending to show the invalidity of the service.

4. After the overruling of the motion to quash, the defendant filed a plea in abatement in which its objections to the service were again presented, together with additional matter setting out the pendency in Missouri of another action involving the same controversy. Doubtless the allegations regarding the Missouri suit related to a nonjurisdictional issue and therefore resulted in a general appearance. But as the defendant's objection to the jurisdiction, made upon a special appearance, had already been overruled, no waiver thereof resulted from its then (or at any time thereafter) raising questions of a different character. In this state a defendant who by a properly restricted appearance has objected to the service upon him does not by thereafter contesting the plaintiff's claim upon its merits lose his right to have the correctness of the order overruling his objection reviewed upon appeal. (*Vann v. Railway Co.,* 103 Kan. 857, 176 Pac. 652.) And the right to contest the claim on its merits without prejudice to a review of the jurisdictional question covers all steps taken in that regard, including the filing of a motion for a new trial. The allegations concerning the pendency of another suit, although proper to be inserted in a plea in abatement, were no more effective as a waiver than any other matter contained in an answer or elsewhere tending to establish a defense or interpose a bar to the prosecution of the action.

5. In its answer the defendant alleged that the plaintiff had made to it fraudulent representations as to the condition of the Anchor Insurance Company, by which it was induced to

buy his own stock therein, and afterwards to enter into the contract sued upon, by which it agreed to pay him $5,000 for his services in aiding it to acquire the rest of the Anchor company stock, and under which it did make him a payment of $2,500. The pleading concluded with the words, "And having made due answer, defendant prays that it may go hence without day, with such relief as the facts may entitle it, and costs of suit." Upon the basis of this prayer the plaintiff invokes the rule that where a defendant, after the erroneous overruling of his objection to the jurisdiction, files an answer and cross petition asking for affirmative relief, he can thereafter take no advantage of the error. (*Thompson v. Greer,* 62 Kan. 522, 64 Pac. 48.) The plaintiff argues that inasmuch as a party is not limited in his recovery to the specific relief for which he asks, the defendant by stating facts sufficient to entitle it to the recovery of the $2,500 paid upon the contract, and perhaps to damages, and by asking for such relief as the facts might warrant, put itself in the attitude of seeking the affirmative intervention of the court in its behalf. The expression used in the prayer of the answer gives plausibility to the argument, but the rule with regard to the waiver of jurisdictional questions by asking affirmative relief should not be administered in a technical spirit. If the defendant is to be deemed to have lost the right to have the ruling upon its motion to quash the service reviewed, by seeking affirmative relief, it must be upon the theory that its answer shows a purpose on its part to ask at the hands of the court, not only protection against being required to pay the $2,500 demanded of it, but also the refunding of what it had already paid, or some other like remedy, such as the recovery of damages. The omission on the part of the defendant to request any specific relief other than that it should be allowed to "go hence without day" and recover its costs impresses us as tending more strongly to show a purpose to rest content with matters as they then stood, than the clause relied upon by the plaintiff tends to the contrary. The general prayer for such relief as the facts might justify is interpretable (with respect to the light it throws upon the defendant's purpose) as relating to protective relief essential or incidental to that specifically asked. The fact that half of the sum contracted for had already been paid was

necessarily in the mind of the pleader when the prayer was framed, and the omission to claim its return is strongly indicative of a definite determination not to seek affirmative relief.

6. The suggestion is made that acquiescence in the overruling of the motion to quash is shown by the failure to include it as one of the grounds of the motion for a new trial. It is, however, only trial rulings—rulings with regard to alleged errors occurring at the trial—that require to be presented in a motion for a new trial in order to be reviewed here, and the order denying the motion to quash is not of that character.

The judgment is reversed, and the cause is remanded with directions to sustain the objection to the jurisdiction and dismiss the case.